IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ERIC WEAVER,

Plaintiff,

v.

RON GREGORY, individually and as Acting Chief of Police for Warm Springs Police Department; CARMEN SMITH, individually and as Public Safety Manager for Confederated Tribes of Warm Springs; ALYSSA MACY, individually and as Chief Operation Officer for Confederated Tribes of Warm Springs,

Defendants.

No. 3:20-cv-0783-HZ

OPINION & ORDER

HERNÁNDEZ, District Judge:

Plaintiff Eric Weaver brings this civil rights and tort action against Defendants Ron Gregory, Carmen Smith, and Alyssa Macy. This matter comes before the Court on Defendants' Motion to Dismiss. For the following reasons, the Court GRANTS Defendants' Motion.

## BACKGROUND

Plaintiff was a tribal police officer for the Warm Springs Police Department from April 2016 until he was terminated in September 2019. Compl. ¶¶ 12-13, ECF 1. At all times relevant, Defendant Ron Gregory was the Acting Chief of Police for the Warm Springs Police Department, *id.* at ¶ 7; Defendant Carmen Smith was the Manager of Public Safety for the Confederated Tribes of Warm Springs ("CTWS"), *id.* at ¶ 8; and Defendant Alyssa Macy was the Chief Operations Officer for the CTWS, *id.* at ¶ 9.

Plaintiff alleges that, beginning in 2018, he witnessed and was subjected to sexual, racial, and derogatory comments and offensive and unwanted touching during his employment for the Warm Springs Police Department. *Id.* at ¶¶ 13-15. Plaintiff reported this conduct to multiple supervisors in his chain of command, and his complaints were passed on to Defendant Gregory. *Id.* at ¶ 16. On January 1, 2019, Defendants Gregory and Smith called a department-wide meeting and, although addressing the department as a whole, singled out Plaintiff by staring at him repeatedly, minimized his complaints, and discouraged the bringing of grievances up the chain of command. *Id.* at ¶ 17. Plaintiff also reported the misconduct to Defendant Macy, but no remedial action was taken. *Id.* at ¶ 18.

Plaintiff alleges Defendants retaliated against him for reporting the harassment and discrimination issues by formally reprimanding him, reporting him to management for using excessive force during three service calls, placing him on unpaid administrative leave during the investigation of those use-of-force incidents, and ultimately terminating him based on the findings of that investigation. *Id.* at ¶¶ 19-24, 34. Plaintiff further alleges that he and his legal counsel experienced a general lack of cooperation from Defendants Smith and Macy during the investigation process. *Id.* at ¶¶ 26-27.

Plaintiff brings four Claims for Relief against Defendants based on actions taken in their "individual" and "official" capacities: (1) Constitutional violation under 42 U.S.C. § 1983 ("Liberty Interest Deprivation"); (2) Constitutional violation under 42 U.S.C. § 1983 ("Retaliation for Free Speech (First Amendment)"); (3) Whistleblower retaliation in violation of Oregon Revised Statute § ("O.R.S.") 659A.199; and (4) Intentional infliction of emotional distress. Defendants Gregory and Smith (hereinafter "Defendants") move to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6).[1]

**STANDARDS**

**I. Rule 12(b)(1)**

A motion to dismiss brought pursuant to Rule 12(b)(1) addresses the court's subject matter jurisdiction. The party asserting jurisdiction bears the burden of proving that the court has subject matter jurisdiction over his claims. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

A Rule 12(b)(1) motion may attack the substance of the complaint's jurisdictional allegations even though the allegations are formally sufficient. *See Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 979-80 (9th Cir. 2007) (court treats motion attacking substance of complaint's jurisdictional allegations as a Rule 12(b)(1) motion); *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996) ("[U]nlike a Rule 12(b)(6) motion, a Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency[.]") (internal quotation omitted). Additionally, the court may consider evidence outside the pleadings to resolve factual disputes. *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *see also*

[1] Defendant Macy has not been served and therefore does not join in Defendants' Motion; however, the forgoing analysis applies with equal force to Plaintiff's allegations against her.

*Dreier*, 106 F.3d at 847 (a challenge to the court's subject matter jurisdiction under Rule 12(b)(1) may rely on affidavits or any other evidence properly before the court).

**II. Rule 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id*. (citations and footnote omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id*. at 679.

## DISCUSSION

Defendants move to dismiss the Complaint because: (1) the Court lacks subject matter jurisdiction under tribal sovereign immunity; (2) Plaintiff's § 1983 claims fail to state a cause of

action due to lack of state action; and (3) the Court should decline to exercise supplemental jurisdiction over the state law claims.

## I. Tribal Sovereign Immunity

Defendants move to dismiss Plaintiff's claims under the doctrine of tribal sovereign immunity. "Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers." *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58 (1978) (citations omitted). Suits against Indian tribes are therefore barred by sovereign immunity absent an express waiver by the tribe or congressional abrogation. *Id.*

The Court lacks jurisdiction over Plaintiff's claims to the extent they are brought against Defendants in their "official" capacities. "In an official-capacity claim, the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself." *Lewis v. Clarke*, 137 S. Ct. 1285, 1291, 197 L. Ed. 2d 631 (2017) (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Dugan v. Rank*, 372 U.S. 609, 611 (1963)). "[L]awsuits brought against employees in their official capacity 'represent only another way of pleading an action against an entity of which an officer is an agent[.]'" *Id.* (quoting *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Thus, "[a] suit against [a tribe's] officials in their official capacities is a suit against the tribe and is barred by tribal sovereign immunity unless that immunity has been abrogated or waived." *Miller v. Wright*, 705 F.3d 919, 927-28 (9th Cir. 2013) (internal quotation marks omitted).

Plaintiff argues the CTWS waived sovereign immunity in Warm Springs Tribal Code ("WSTC") Chapter 390:

> The Tribe has authorized tort claims against the Tribe, its subordinate organizations, enterprises, officers, agents, servants and employees subject to the conditions and limitation set forth in Warm Springs Tribal Code Chapter 205. Any tort claim brought against the Tribe, the WSPD, a State Certified Tribal Officer, or other Tribal official arising from the Tribe's state law enforcement authority under

> SB 412 must be asserted in accordance with Chapter 205, except that the limitations on damages set forth in WSTC 205.004(1) shall be inapplicable to tort claims arising from the Tribe's state law enforcement authority under SB 412. Instead, limitations of liability applicable to tort claims arising from the Tribe's state law enforcement authority under SB 412 shall be the limitations of liability applicable to a "local public body" (as that term is defined in ORS 30.260(6)) set forth in the Oregon Tort Claims Act, ORS 30.260 to ORS 30.300.

WSTC § 390.130.[2]

However, Chapter 390 "is intended to apply only to activities by the Warm Springs law enforcement personnel conducted under SB 412 – i.e., the enforcement of criminal and traffic laws of the State of Oregon." WSTC § 390.001. "[A]ll provisions under [Chapter 390] shall be narrowly constructed to apply only to such state law enforcements activities, and to no other activities conducted by Warm Springs law enforcement personnel." *Id.* Plaintiff's claims are not based on Defendant's enforcement of Oregon criminal and traffic laws. Accordingly, Chapter 390's waiver is not applicable to the allegations at hand.

Furthermore, even assuming Plaintiff's claims are within the scope of Chapter 390, Plaintiff misunderstands the extent of WSTC § 390.130's waiver. A claim brought pursuant to Chapter 390 is "subject to the conditions and limitations" and "must be asserted in accordance with Chapter 205." WSTC § 390.130. Chapter 205 provides that "[t]he Tribes, its subordinate organization, enterprises, officer, agents, servants and employees may be sued in the Warm Springs Tribal Court or other court of competent jurisdiction only when explicitly authorized by either (1) applicable federal law, or (2) by ordinance or resolution of the Tribal Council." WSTC § 205.001. Plaintiff does not contend that Congress has abrogated CTWS's sovereign immunity, and, for its part, the CTWS has consented to be sued "only in the Tribal Court[.]" WSTC § 205.004. As Judge Sullivan previously concluded, WSTC "§ 205.001 is a limited waiver for

---

[2] The WSTC is available at: https://warmsprings-nsn.gov/government/tribal-code/.

tort actions in Tribal Court, and is not a waiver of immunity for all purposes." *Est. of Kalama ex rel. Scott v. Jefferson Cnty.*, No. 3:12-CV-01766-SU, 2013 WL 3146858, at *5 (D. Or. June 18, 2013); *see also Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 148 (1982) (Tribal sovereign immunity "will remain intact unless surrendered in unmistakable terms"); *Demontiney v. U.S. ex rel. Dep't of Interior, Bureau of Indian Affs.*, 255 F.3d 801, 811 (9th Cir. 2001) ("There is a strong presumption against waiver of tribal sovereign immunity."). Because the CTWS has not waived its sovereign immunity, the Court lacks subject matter jurisdiction over Plaintiff's claims to the extent they are brought against Defendants in their official capacities.

However, Plaintiff's claims against Defendants in their individual capacities are not barred by tribal sovereign immunity. "Although tribal sovereign immunity extends to tribal officials when acting in their official capacity and within the scope of their authority, tribal defendants sued in their individual capacities for money damages are not entitled to sovereign immunity, even though they are sued for actions taken in the course of their official duties." *Pistor v. Garcia*, 791 F.3d 1104, 1112 (9th Cir. 2015) (internal citations and quotation marks omitted). Defendants concede that *Pistor* allows individual-capacity suits against tribal officials but argues that the United States Supreme Court's decision in *Lewis v. Clarke* implicitly limited application of that rule to claims where the tribal official's conduct occurred off reservation land. 137 S. Ct. at 1291. Defendant's argument is unpersuasive. Simply put, the location of the tribal defendant's tortious conduct was merely a fact of that case that had no bearing on *Lewis*'s holding that tribal sovereign immunity did not bar the action from proceeding against the tribal defendant in his individual capacity. *Id.* ("This is not a suit against Clarke in his official capacity. It is simply a suit against Clarke to recover for his personal actions, which 'will not require action by the sovereign or disturb the sovereign's property.'") (citation omitted). Accordingly,

the Court denies Defendants' motion to dismiss Plaintiff's claims to the extent they are brought against Defendants in their individual capacities.

## II. 42 U.S.C. § 1983 Claims

Defendants move to dismiss Plaintiff's First and Second Claims for Relief for lack of state action. Actions under 42 U.S.C. § 1983 "cannot be maintained in federal court for persons alleging a deprivation of constitutional rights under color of tribal law." *Evans v. McKay*, 869 F.2d 1341, 1347 (9th Cir. 1989). Rather, to state a cognizable § 1983 claim, Plaintiff must allege that Defendants deprived him of a right secured by the Constitution and acted "under color of *state* law." *Naffe v. Frey*, 789 F.3d 1030, 1036 (9th Cir. 2015) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)) (emphasis added).

Defendants' internal employment actions against a tribal employee are inherently actions taken under color of tribal law. Nevertheless, Plaintiff argues Defendants became state actors by receiving state training and resources and by retaliating against him by reporting his termination to the Oregon Department of Public Safety Standards and Training ("DPSST"). As a preliminary note, the Complaint does not allege that Defendants submitted information about Plaintiff to DPSST. More importantly, even if Plaintiff had so alleged, Defendant's "private misuse of a state [process] does not describe conduct that can be attributed to the State[.]" *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982); *cf. Zielinski v. Serv. Emps. Int'l Union Loc. 503*, No. 3:20-CV-00165-HZ, 2020 WL 6471690, at *3 (D. Or. Nov. 2, 2020) (finding no state action where a union defendant allegedly abused a state reporting process by falsely representing the plaintiff's membership status and thereby causing his state employer to deduct unauthorized union dues from his paycheck).

Additionally, Defendants' receipt of "state training and certification to enforce state law under SB 412" does not make them "state actors" when making internal tribal employment decisions. Pl. Resp. 5, ECF 14. "The making of a contract with the State, or the acceptance of state or federal funds, does not convert tribal officials into state or federal actors." *Sandoval v. Lujan*, No. CV 03-01431 JEC/ACT, 2004 WL 7337521, at *5 (D.N.M. Oct. 14, 2004) (citing *E.F.W. v. St. Stephen's Indian High Sch.*, 264 F.3d 1297, 1306 (10th Cir. 2001)). Under the state-action test, "the [constitutional] deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible." *Lugar*, 457 U.S. at 937. Defendants were not exercising their authority to enforce Oregon law when they allegedly violated Plaintiff's constitutional rights. Accordingly, the Court grants Defendants' motion and dismisses Plaintiff's § 1983 claims for lack of state action.

## III. State Law Claims

Because Plaintiff's federal claims have been dismissed, the Court must determine whether it should exercise supplemental jurisdiction over his state law claims. A district court may decline to exercise supplemental jurisdiction over state law claims if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). When a court dismisses all federal law claims before trial, "the balance of the factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *accord Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc); *see also Crane v. Allen*, No. 3:09-cv-1303-HZ, 2012 WL 602432, at *10 (D. Or. Feb. 22, 2012) ("Having resolved all claims over which it had original jurisdiction,

this court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.").

The Court finds that the factors of judicial economy, convenience, fairness, and comity weigh in favor of declining to exercise supplemental jurisdiction. Neither the Court nor the parties have invested significant time and resources sufficient to justify retaining jurisdiction. As Defendants correctly note, Plaintiff's baseless assertion that he cannot get a fair trial at the Warm Springs Tribal Court "is not only unsupportable, it is offensive to the countless men and women (both tribal and non-tribal members alike) who have spent decades of time and effort in developing one of the oldest and most established tribal courts in the Pacific Northwest." Defs. Reply 12, ECF 16. The Tribal Court is a convenient forum for the parties and declining to exercise supplemental jurisdiction shows comity for the CTWS's sovereignty.[3] For these reasons, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. Accordingly, Plaintiff's Third and Fourth Claims for Relief are dismissed without prejudice.

**IV. Leave to Amend**

Rule 15(a) states that the Court should "freely give leave" to amend the complaint "when justice so requires." Fed. R. Civ. P. 15(a). Whether to grant or deny leave to amend is within the Court's discretion. *Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1331 (9th Cir. 1996). That discretion is guided, however, by the "underlying purpose of Rule 15 . . . to facilitate decision on the merits, rather than on the pleadings or technicalities." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2003) (citation omitted). Accordingly, the policy favoring amendment should be

[3] In declining to exercise supplemental jurisdiction over Plaintiff's state law claims, the Court need not address Defendants' argument that O.R.S. 659A.199 does not apply to tribal employment matters.

applied with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citations omitted).

Five factors weigh on the propriety of a motion for leave to amend: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of the amendment; and (5) whether the plaintiff has previously amended its complaint. *Nunes*, 375 F.3d at 808 (citation omitted). Prejudice to the opposing party is the "touchstone" of the Rule 15(a) inquiry and carries the greatest weight. *Eminence Capital*, LLC, 316 F.3d at 1052 (citation omitted). Absent prejudice or a strong showing on any of the other factors, there is a presumption under Rule 15(a) in favor of granting leave to amend. *Id.*

Although Plaintiff states that he "is happy to amend his complaint where appropriate" if the Court finds he failed to adequately plead "violations made under the color of state law," he neglects to explain how he intends to cure the deficiencies in the Complaint. Pl. Resp. 4 n.1. Nor does Plaintiff address the leave-to-amend factors discussed above. Moreover, given the limited nature of Plaintiff's allegations, the Court has serious doubts that amendment can cure the deficiencies in his legal theories. Therefore, Plaintiff's request for leave to amend is denied. Nonetheless, Plaintiff may renew his request by filing a motion for leave to amend under Rule 15(a) along with the proposed amended complaint. A renewed motion for leave to amend, if any, is due within 14 days of this Opinion & Order.

///

///

///

///

///

**CONCLUSION**

The Court GRANTS Defendants' Motion to Dismiss [10]. If Plaintiff does not timely renew his request for leave to amend, the Court will enter judgment in favor of Defendants.

IT IS SO ORDERED.

DATED: March 16, 2021.

MARCO A. HERNÁNDEZ
United States District Judge